## BELLAS *against* EVANS.

W died intestate, leaving issue seven children; in a proceeding of the Orphans' court by writ of partition and valuation, his real estate was valued at eight thousand nine hundred and seventy five pounds, twelve shillings and one penny, and divided into seven parts of unequal value; the value of each heir was twelve hundred and eighty-two pounds four shillings and seven pence, and each heir took one of the parts at the valuation:—One of the allotments was composed of different tracts of land, upon each of which a separate value was put by the inquest, and the whole was valued at two thousand and seventy-two pounds and was confirmed to E·in right of his wife, "on his giving a mortgage upon the lands, of which his allotment was composed, to secure to the other heirs seven hundred and eighty-nine pounds nineteen shillings and five pence, which was the difference in amount between his share and the value of the land taken by him." Of this seven hundred and eighty-nine pounds nineteen shillings and five pence, EE, another of the heirs, whose allotment was of less value than her share, was entitled to one hundred and sixty-six pounds seventeen shillings and six pence. E never gave the mortgage which the Orphans' Court, by their decree required; but after his death and that of his wife, a judgment was obtained against her administrators, upon which one of the tracts, which was embraced in the allotment decreed to E. and which was valued at one hundred seventy-six pounds, was sold by the sheriff and purchased by B. EE died, without having received the one hundred and sixty-six pounds seventeen shillings and six pence which was due to her by E. and her heirs brought an ejectment against B. for their interest in the tract of land purchased by him at the sheriff's sale. *Held,* that E. not having given the mortgage, as was required by the decree of the Orphan's Court, the heirs of EE. could maintain an ejectment to recover their interest. And the interest which the plaintiffs were entitled to recover, was with regard to the amount of their claim of one hundred and sixty-six pounds seventeen shillings and six pence, that proportion of the land which was equal to the proportion which its value bore to the whole value of the allotment.

ERROR to the Common Pleas of *Northumberland* county.

This was an action of ejectment for a tract of land, in which the heirs of *Elizabeth Evans* were plaintiffs, and *Hugh Bellas* Esq. was defendant in the court below. The facts of the case are so fully stated in the opinion of his Honor, who delivered that of the court, that they need not be repeated.

*Anthony* and *Merill* for plaintiff in error.

*Greenough*, for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—This was an action of ejectment, brought in the court of Common Pleas of *Northumberland* county, by the defendants in error, to recover, as they alleged, the possession of six seventh equal and undivided parts of two hundred and eighty-one acres of land. Both parties derived their claims to the land in dispute from *Jacob Wallace.*

From the evidence, it appeared that *Joseph Jacob Wallace* died in 1795 intestate; seized in fee of a large real estate, having seven children his heirs, namely *John L.*, *Grace*, intermarried with *E-van R. Evans, Sarah* intermarried with *Daniel Smith, Thomas Gaynor, Elizabeth,* intermarried afterwards with *John Evans*

(B ·llas *v.* Evans.)

and *Joseph J Wallace.* In 1797, under a writ of partition and valuation, issued out of the Orphans' court of *Northumberland* county, a partitition and valuation were made of the estate.    It was divided into seven allotments of unequal value, which were elected and to be taken by the heirs respectively, at an Orphans' Court holden in January, 1798.    One allotment valued at twenty hundred and fifty-six pounds twelve shillings, was taken and decreed by the court to *John L.* upon his giving a mortgage on the lands contained in his allotment, to secure to *Thomas, Gaynor, Elizabeth* and *Joseph J.* the payment of their respective proportions of seven hundred and seventy-four pounds, seven shillings and five pence, within twelve months, in order to equalize the partition; a second allotment, valued at twenty-one hundred and sixty-five pounds, was taken by and decreed to *Dan. Smith* in right of his wife, on his giving a mortgage on the lands of which his allotment consisted, to secure in the like manner to the same, for the like purpose, the payment of eight hundred and eighty-two pounds, nineteen shillings and five pence; a third allotment valued at two thousand and seventy-two pounds, was taken by and decreed to *E.R.Evans,* in right of his wife, on his giving a mortgage upon the lands of which his allotment was composed, to secure to the same, the payment in like manner, and for like purpose, of seven hundred and eighty-nine pounds, nineteen shillings and five pence: a fourth allotment, valued at six hundred and fifty-two pounds, was taken by and decreed to *Thomas Wallace;* a fifth valued at six hundred and twenty-seven pounds, was taken by and decreed to *Gaynor;* a sixth, valued at seven hundred and sixty-five pounds, was taken and decreed to *Elizabeth;* and the seventh valued at six hundred and fifty three pounds, was taken by and decreed to *Joseph.*    The valuation of the whole real estate amounted to eight thousand nine hundred and seventy five pounds, twelve shillings and one penny.    The land in dispute was part of the allotment taken by and decreed to *Evan R. Evans,* upon his giving a mortgage as directed, and was valued by the inquest at one hundred and seventy-six pounds.    Neither *John L. Wallis, Daniel Smith,* or *Evan R. Evans,* ever gave the mortgage required by the decree of the Orphans'. Court; although it seemed to be admitted, that *John L Wallace,* and *Daniel Smith* had each paid the amount of money charged upon his allotment; and for which he was directed by the Orphans' Court to give a mortgage.    But it was alleged that *Evan R. Evans* has never paid any part of his; nor was any evidence given of his having done so.    Each of the seven heirs took possession of his or her allotment.    The one seventh part of the valuation of the real estate was twelve hundred and eighty-two pounds, four shillings and seven pence.    The value of the allot-

ment taken by *Elizabeth*, the mother of the plaintiff below, was seven hundred and sixty-five pounds, falling short of her share of the real estate, five hundred and seventeen pounds, four shillings, and seven pence; of which one hundred and sixty-six pounds, seventeen shillings, and six pence, was to be paid by *Evan R. Evans*, according to the decree of the Orphans' Court. *Elizabeth* and her husband *John Evans* both died some years ago, leaving the defendants in error, their only children, and heirs at law. It was said by the counsel for the defendants in error, that this action was brought with a view to enforce the payment of the one hundred and sixty-six pounds, seventeen shillings, and six pence, with its interest; but it was not pretended, that the executors or administrators of *Elizabeth Wallace* had any agency or concern in bringing or carrying it on.

The defendant below, claimed the land in dispute, under a sale made of it by the sheriff of *Northumberland* county, who had taken it in execution upon a judgment at the suit of *Joseph J. Wallace*, against the administrator of *Grace Evans*, who had been the wife of *Evan R. Evans*, and was one of the heirs before named of the intestate *Joseph Jacob Wallace*. The plaintiff in the judgment was also another of the heirs, and was one of those to whom the Orphan's Court decreed *Evan R. Evans* to give the mortgage. The judgment, it was said, was obtained by *Joseph J. Wallace*, for his proportion of that same money, but upon what principle, it is difficult even to conjecture.

On the trial in the Court below, the counsel for the plaintiffs there requested the court to instruct the jury, that "the plaintiffs were not in any worse situation than they would have been, had *Evans* given a mortgage, in pursuance of the decree of the Orphan's Court. That the sum of one hundred and sixty-six pounds, seventeen shillings, and six pence, was a lien on the whole of the land assigned to *Evans* and his wife, except her one seventh part; and until the money was paid, the plaintiffs had a right to recover from the defendant, who was a stranger, and had no title whatever, except to the one seventh part aforesaid, that is say, they had a right to recover six sevenths of the land."

Upon which the court told the jury, that the plaintiffs were not to be in a worse situation than they would have been if the mortgage had been given, in pursuance of the decree of the Orphans' Court. The sum of one hundred and sixty-six pounds, seventeen shillings, and six pence, was a lien upon the whole of the land adjudged to *Evan R. Evans*, and *Grace* his wife. If the mortgage had been given, it would have been given to *Elizabeth Evans*, and the other heirs, for the sum of seven hundred and eighty-nine pounds, nineteen shillings, and five pence; whereas the sum due the plaintiff was only one hundred and sixty-six pounds, seventeen

61

(Bellas *v.*·Evans.)

shillings, and six pence; by which it would appear, that the sum of six hundred and twenty-three pounds, two shillings and eleven pence was due the other heirs, and equally a lien upon the land adjudged to *Evan R. Evans*, and if not paid, they could bring their ejectments. The plaintiffs were not entitled to six sevenths of the whole land. The other heirs would thus be excluded from their shares. The defendant was not to be considered as a stranger, but he represented *Grace Wallace*, one of the heirs of *Joseph Jacob Wallace*, deceased."

The counsel, also, of the defendant below, prayed the court "to instruct the jury, that even if all the matters had not been settled among the heirs of *Joseph Jacob Wallace,* the plaintiff could only recover one seventh of the premises, from which, however, was to. be taken so much, and such proportion, as *Elizabeth Wallace's* share of land bears to her whole share of land and money. That is, seven hundred and sixty-five parts of twelve hundred and eighty-two parts are to be taken from her one seventh, leaving her five hundred and seventeen parts of twelve hundred and eighty-two parts of one seventh; equal to little less than one seventeenth of the whole, agreeably to a calculation now exhibited; and that the calculation was made upon just and legal principles: and therefore plaintiffs, at all events, could not recover more than one seventeenth."

The following is the calculation referred to:

"517-1282 of 1-7 equals 517-8974, or about 1-18 & a fraction.

$$517)8974(17 \ 185\text{-}517, \text{ or about } 1\text{-}17 \ \& \ 1\text{-}3.$$

$$\begin{array}{r} 517 \\ \hline 3804 \\ 3619 \\ \hline 185 \end{array}$$

or about 1-18 & 1-3 of 1-18."

In answer to which, the court told the jury, that they could not so instruct them, as they had already been instructed, that the plaintiffs were entitled to recover the same proportion in land, which they would have had a right to in money, if a mortgage had been given chargeable on the valuation of that particular tract of land, according to the valuation of that tract."

It is assigned for error, that the court were wrong in their answer to the request of the counsel for the plaintiffs below: and again, in not instructing the jury as requested by the counsel for the defendant below.

The court, in the body of their charge to the jury, told them, "that the plaintiffs below had a right to recover the same propor-

(Bellas *v.* Evans.)

tion of the land in dispute, that *Elizabeth Evans,* (late *Wallace)* would have been entitled to recover in money, chargeable on this particular tract of land, according to its valuation, which she would have been entitled to receive, if *Evan R. Evans* had given a mortgage. The jury, however, must make the calculation, and ascertain what proportion of the whole tract in dispute the plaintiffs are entitled to recover, according to the valuation of the tract." After the charge of the court, and their answers to the points submitted by the counsel on both sides, the jury returned a verdict in favor of the plaintiffs below for four undivided nineteenth parts of the land; upon which the court rendered a judgment. .

I am rather inclined to think, that I may not comprehend and understand fully, what was intended to be conveyed by the court in their direction to the jury. In that part of the charge which I have recited, although not very explicit, I would have thought, that the true rule for ascertaining the extent of the plaintiff's right to the land in dispute, might have been discovered, perhaps, and drawn from it, had not the court, when they came to answer the points submitted by the counsel for the plaintiffs below, have said, that the plaintiffs were not in a worse situation than they would have been if *Evans* had given the mortgage: that the sum of one hundred and sixty-six pounds, seventeen shillings and six pence, was a lien on the whole of the land adjudged to *Evan R. Evans* and *Grace* his wife. But as three other of the heirs would have been interested jointly with the mother of the plaintiffs, in the mortgage, had it been given, the plaintiffs could not recover six sevenths of the whole land, because that would exclude the other three. Now from this, it does appear to me, that the jury were left to infer, that the mother of the plaintiffs and the other three heirs, *Thomas, Gaynor,* and *Joseph,* in whose favor the mortgage was directed to be given, were clearly entitled to the six sevenths of the land in dispute, and that they had only to ascertain what the plaintiff's relative proportion of these six sevenths would amount to, as between these four heirs, and to return a verdict accordingly.

Without making an accurate calculation, I would suppose, that the plaintiff's interest in the land, if settled by this rule, would come to about four nineteenths, as found by the jury. And as the court approved of the verdict, by entering judgment upon it, we may fairly conclude, that it was given by the jury in conformity to their direction. Thus understood, I think there was error in the charge of the court. For, according to the decision of this court, in *Smith* and *Scudder* 11 *Serg. & Rawle,* 325, the decree of the Orphan's Court vested no interest whatever in *Evan R. Evans,* as he did not comply with the condition annexed to it, in giving the mortgage; and of course, if no interest vested in him, there-

could be no divestiture of interest on the part of the others interested in the estate so decreed to him.

The parties, then, notwithstanding the decree of the Orphans' Court, must be considered as standing on the same ground, and relative situation to each other in regard to interest, in this part of the estate, that they would have done, had no such decree been made in favor of *Evan R. Evans.* Indeed, the late Chief Justice, who delivered the opinion of the court in *Smith* and *Scudder*, seems to have been of the opinion, that although *Daniel Smith*, who is the same already mentioned in this case, as having taken part of the estate in right of his wife, had taken possession of the allotment adjudged to him in her right, and had kept it, until his death, yet, that he was *never bound for the payment of the money:* and that it might therefore have been considered a *devastavit* in his executor, to have applied the assets of his estate to the payment of the money, for which he was ordered to give a mortgage by the Orphans' Court. See 11 *Serg. & Rawle*, 327. If this be correct, the case can, in no wise, be placed upon the footing of a contract. According to the opinion thus expressed in *Smith* and *Scudder, Evan R Evans*, although he took possession of the allotment decreed to him, and kept it until his death, was yet under no obligation to pay the money, and of course could not have been compelled, in any way, to pay it. All, then, that was said by the court below, about the plaintiff's mother, or the plaintiffs themselves having a lien upon the land for the payment of the money, is without any basis to rest on. For no mortgage ought to have been accepted of, under the decree of the Orphans' Court, without a covenant contained in it for the payment of the money; or otherwise, a bond had also been given for the payment of it: because it cannot be supposed, that the Orphans' Court, although it directed no other security to be given, intended to dispense with the personal security of the party, to whom it had decreed the land. If *Evan R. Evans*, then, was under no obligation to pay the money, according to the decree, he of course was not bound to give the mortgage as directed; and the argument which has been raised in support of the judgment of the court below, as well as to vindicate the right of the plaintiff to recover to the full extent of six sevenths of the whole tract of land, entirely fails. This argument is, that as *Evans* was bound, either to have paid the money, or to have given the mortgage for the payment of it, equity would consider the latter as having been actually done, inasmuch as it ought to have been done; and then the mortgagee, or those succeeding to her rights, would be entitled, under the mortgage, to recover the possession of the land, to the full extent of what *Evans* could have mortgaged; which was at least all but his wife's right, which is alleged, was only one seventh. But if the case were ever susceptible of this

(Bellas *v.* Evans.)

assumed transmutation, other obstacles might be thrown in the way of the plaintiff's recovery, which, perhaps, could not be very easily surmounted.    For a mortgage being considered in *Pennsylvania* a mere security for the payment of money, or performance of some other act, and as belonging to the personal representatives of the deceased mortgagee, and not his heirs at law: being assignable by his executors or administrators, and considered to all intents and purposes as being part of and belonging to his personal estate, and they held responsible for it as such, how could the heirs at law of the mortgagee take charge of it, and proceed upon it to enforce the payment of the money?    For whether the proceeding be by *scire facias*, under an act of Assembly, or by action of ejectment, it can only be had for the purpose of compelling payment of the money or damages in certain cases; which when paid and satisfied with interest and costs, at any time before a sale shall be made of the mortgaged premises, all further proceedings, as well as all claim upon the part of the mortgagee to them, must cease and forever be at an end.

In the present case, it does not appear that there are either executors or administrators to receive the money, if that be the object of the suit; and it is difficult to conceive how the plaintiffs could have expected to maintain their action, upon the principle of considering the mortgage as actually given.    Because, if that had been done, all the right which the mother of the plaintiffs below had to the land in question, would thereby have been converted from real into personal estate, and have rendered the taking out of letters of administration upon her estate necessary, in order to receive the money.    And whether such be the actual state of the case, or it be only assumed for the purpose of advancing justice, still the consequences in law must be considered to be the same.    If this were not to be the case, the creditors of the mother of the plaintiffs below might be defrauded of their just claims against her estate.

The plaintiffs below must, then, be considered as prosecuting their right to the land specifically, upon the principle of its being real estate; and having become absolutely their property by descent, without any mixture of personalty about it.    And this appears to me to be the only ground upon which they can maintain their action of ejectment, for any portion of the land.

The partition of the estate, and the decree of the Orphans' Court upon it, so far as it was carried into execution, by a performance on the part of those of what they were thereby required to do, became final and conclusive upon all the heirs.    It is said that *Evan R. Evans*, was the only one of the seven, who ultimately failed to comply with the decree of the Orphans' Court.    If the other six complied, they thereby acquired an absolute title to their respec-

(B llas *v.* Evans.)

tive allotments in severalty; and where the allotment taken by any one was equal to, or exceeded in value one seventh of the whole estate, his or her interest in the estate, which before extended throughout and to every part of it, became concentrated in his or her allotment so taken; and when not equal in value still it was a concentration of his or her interest *pro tanto.* And although *Evan R. Evans,* who had the power to exercise the right of election, on behalf of his wife *Grace,* as one of the heirs, and having done so, failed to comply with the terms upon which his allotment was decreed to him, yet the other six, having taken their allotments, which embraced all the remaining part of the estate, and having fulfilled the decree of the Orphans' Court, thereby excluded the wife of *Evan R. Evans* from all claim and interest in their allotments; and consequently by this exclusion, concentrated her claim to the whole estate, within the allotment taken by her husband, *Evan R. Evans.* This allotment, then, having been valued at two thousand and seventy-two pounds, and one seventh of the whole estate, being twelve hundred and eighty-two pounds, four shillings and seven pence, *Grace Evans,* the wife of *Evan R. Evans,* became invested with the right in fee to twelve hundred and eighty-two and fifty-five two hundred and fortieth parts of the two thousand and seventy-two parts, of which the allotment was composed; the residue of this allotment, consisting of seven hundred and eighty-nine and one hundred and eighty-five two hundred and fortieth parts belonged to *Thomas, Gaynor, Joseph,* and the mother of the plaintiffs below, in their several proportions. The mother of the plaintiffs, under the decree of the Orphans' Court, as we have seen, got, in the allotment which she took of the estate, seven hundred and sixty-five parts of her twelve hundred and eighty-two and fifty-five two hundred and fortieths. From *John L. Wallace,* and *Daniel Smith,* she received three hundred and fifty pounds, seven shillings, and one penny, equal to three hundred and fifty and eighty-five two hundred and fortieth parts more, which added to the seven hundred and sixty-five parts contained in the allotment taken by her, make eleven hundred and fifteen and eighty-five two hundred and fortieth parts of her twelve hundred and eighty-two and fifty-five two hundred and fortieths that she received in her her life time, leaving one hundred and sixty-six pounds, seventeen shillings and six pence, equal to one hundred and sixty-six and two hundred and ten two hundred and fortieths, which remain in the allotment that was assigned to *Evan R. Evans,* and is an undivided interest in that allotment, extending alike throughout every part of it. Upon the plainest principles of justice, and even of equity, the mother could in her life time have claimed no more than this.

(Bellas *v.* Evans.)

The plaintiffs below, then, are entitled to recover as much of the two hundred and eighty-one acres, the contents of the tract of land in dispute, as will be equal to that relative proportion of the one hundred and six pounds, seventeen shillings and six pence, which the two hundred and eighty-one acres, valued at one hundred and seventy-six pounds ought to bear, as a part of the allotment valued at two thousand and seventy-two pounds, upon which the one hundred and sixty-six pounds, seventeen shillings and six pence were charged. This may be ascertained by answering two questions according to the single rule of three. First, if two thousand and seventy-two pounds, the value of the whole allotment, must pay one hundred and sixty-six pounds, seventeen shillings and six pence, what ought one hundred and seventy-six pounds, the value of two hundred and eighty-one acres of land, a part of the whole to pay? The answer to this will be found to be fourteen pounds and two shillings. And again, if one hundred and seventy-six pounds be equal to two hundred and eighty-one acres, how many acres will be equal to fourteen pounds and two shillings? A correct solution of this last question will give about twenty-two acres and eighty-two perches, equal to one undivided twelfth and forty-four one hundredth parts of the two hundred and eighty-one acres.

Judgment reversed and a *venire de novo* awarded.